**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| GAIL I. AUSTER, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 02-0733 (EGS) |
| GHANA AIRWAYS, *et al.*, | ) | |
| Defendants. | ) | |
| SIDDHARTHA PRAKASH | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 02-1070 |
| GHANA AIRWAYS, *et al.*, | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiffs Gail I. Auster, Megan S. Auster-Rosen, and Siddhartha Prakash bring this action under the Warsaw Convention[1] for personal injuries resulting from the crash of Airlink Flight 200, traveling from Tamale, Ghana, to Accra, Ghana on June 5, 2000.[2]  Defendant Airlink and Defendant Ghana Airways' Second

---

[1] Convention for the Unification of Certain Rules Relating to the International Transportation by Air. October 1, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), reprinted in note following 49 U.S.C. § 40105 (1997), *as amended by* Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed at Warsaw on October 12, 1929, reprinted in S. Exec. Rep. No. 105-20, pp. 21-32 (1998).

[2] By Order of this Court, the above-captioned cases were consolidated under Civil Action No. 02-733 on July 27, 2005.

Motion for Summary Judgment is pending before the Court.  Upon consideration of defendants' motion, the responses and replies thereto, the record in this case, and for the reasons detailed below, this Court concludes that defendants' motion for summary judgment should be **GRANTED**.

## I.   Background

Plaintiff Gail Auster's decedent, Paul Rosen, and plaintiffs Megan S. Auster-Rosen, and Siddhartha Prakash (collectively "plaintiffs") were passengers on Airlink Flight 200 during domestic air travel between Tamale, Ghana and Accra, Ghana on June 5, 2000.  *See* Auster Compl. ¶ 11(4); Prakash Compl. ¶ 10. Airlink Flight 200 crashed while on the landing approach to Kotoka International Airport in Accra, Ghana. *Id.*  During the crash Kenneth Paul Rosen was killed, and Megan S. Auster-Rosen and Siddhartha Prakash suffered severe injuries. *Id.*

Siddhartha Prakash, on behalf of himself, Gail I. Auster, individually and as personal representative of the Estate of Kenneth Paul Rosen, deceased, and as the natural mother of Seth E. Auster-Rosen and Rachel K. Auster-Rosen, minors, and Megan S. Auster-Rosen, filed suit against defendants Ghana Airways Ltd., Airlink, and the Republic of Ghana (collectively "defendants"), alleging willful and wanton misconduct on the part of defendants in the operation of Airlink Flight 200, and seeking significant damages totaling upwards of $40,000,000. *See* Auster Compl. ¶¶ 11, 15; Prakash Compl. ¶¶ 8, 11, 13.

Plaintiffs' claims are brought pursuant to the Warsaw Convention, which is the exclusive remedy for personal injuries suffered in the course of international commercial air travel. Defendants maintain that they are entitled to summary judgment because the domestic flight between Tamale, Ghana and Accra, Ghana was not part of international air travel and the Warsaw Convention thus does not apply.  Plaintiffs insist, however, that the domestic flight was merely one leg of their respective international journeys and that therefore their injuries are covered by the Convention.

## II.  Standard of Review

Summary judgment should be granted pursuant to Fed. R. Civ. P. 56 only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). Although the party opposing the motion may not rely solely on pleadings or conclusory factual allegations, the court must resolve ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

3

## III. Discussion

A.   "International Transportation" and the Warsaw Convention

     The Warsaw Convention applies to all international commercial air travel and is the exclusive remedy for personal injuries suffered "on board [an] aircraft or in the course of any of the operations of embarking or disembarking."  *See El Al Israel Airlines v. Tseng*, 525 U.S. 155, 161 (1999).  The issue in the instant case is whether plaintiffs' travel from Tamale, Ghana to Accra, Ghana was "international transportation" for purposes of the Warsaw Convention.

     Article 1(1) of the Convention provides that the Convention applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire."  49 U.S.C. § 40105 note.  "International transportation" is defined in Article 1(2) as:

> any transportation in which, according to the contract
> made by the parties, the place of departure and the
> place of destination, whether or not there be a break
> in the transportation or a transhipment, are situated
> ... within the territories of two High Contracting
> Parties ...

     In order for a wholly domestic flight to fall within the Warsaw Convention's definition of "international transportation," the domestic flight must be part of one "undivided [international] transportation."  Article 1(3) of the Convention provides:

> Transportation to be performed by several successive
> air carriers shall be deemed, for the purpose of this

4

> Convention, to be one undivided transportation, if it
> has been regarded by the parties as a single operation,
> whether it has been agreed upon under the form of a
> single contract or of a series of contracts, and it
> does not lose its international character merely
> because one contract or a series of contracts is to be
> performed entirely within a territory ... of the same
> High Contracting Party.

Thus, plaintiffs are entitled to relief pursuant to the Warsaw
Convention for their injuries resulting from the domestic Airlink
crash only if, according to the agreement between the parties,
that flight was part of "one undivided transportation."

In support of their argument that the Airlink flight was
part of "one undivided [international] transportation,"
plaintiffs rely on a number of facts which they claim are
material and in dispute.  The Auster plaintiffs note that they
were in possession of round-trip, international tickets on Ghana
Airways, with the United States as their final destination, and
that before leaving the U.S., Mr. Rosen and his daughter had
planned the domestic flight in Ghana but, because Airlink did not
sell tickets outside of Ghana, those tickets had to be purchased
separately, once plaintiffs arrived in Ghana.  Auster Pl. Opp. at
3 (citing plaintiffs' affidavits).

The Auster plaintiffs further maintain that once in Accra,
they purchased round-trip tickets on Airlink for travel between
Accra and Tamale, with the return flight scheduled to arrive in
Accra in time for them to catch their return flight to the U.S.
*Id.* at 3-4.  Moreover, plaintiffs state that they showed their

passports to the Airlink representative when they purchased the domestic tickets and advised the representative that they had to travel back to Accra in time to catch their return flight to the U.S. *Id.* at 4. Finally, the Auster plaintiffs contend that they considered the flight from Tamale to Accra to be part of a single journey back to the U.S., and that the ticket agent who sold them the Airlink tickets was advised of their flight to the U.S. and suggested that plaintiffs take an earlier flight from Tamale in order to assure that they would make their international connections. *Id.* at 4-5.

Plaintiff Siddhartha Prakash was also in possession of round-trip, international tickets on commercial airline carriers, including Ghana Airways, with the U.S. as his final destination. Prakash Opp. at 3 (citing plaintiffs' affidavits). Plaintiff Prakash also maintains that he considered the flight from Tamale to Accra to be part of a continuous trip back to the U.S. *Id.* at 4. Mr. Prakash posits that the travel agent who booked his flight to Accra was aware that he was a foreigner and would have been in international travel. *Id.*

All plaintiffs assert that Airlink and Ghana Airways were merged or allied entities, that plaintiffs were given boarding passes from Ghana Airways, not Airlink, and that based on these boarding passes and what they saw at the airport in Tamale, they believed that they were on a Ghana Airways flight. *See* Auster Opp. at 4; Prakash Opp. at 3.

B.    Intent of the Parties

Defendants point to a number of cases in which courts, including this one, have held that it is the unambiguous language in the contract for transportation between the parties - i.e., the tickets - and the circumstances surrounding the ticketing, not the subjective intent of the parties, that will determine whether a domestic flight and international flight constitute a single operation for purposes of the Warsaw Convention.  *See Manion v. Am. Airlines, Inc.*, 17 F. Supp. 2d 1, 4 ("In order to determine the terms of a contract, the Court must decide the intent of the parties based on the objective evidence, rather than the 'after-the-fact professed subjective intent.'") (citations omitted); *see also Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 987 (9th Cir. 2004); *Sopack v. Northern Mountain Helicopter Serv.*, 52 F.2d 817, 819 (9th Cir. 1995); *Petrire v. Spantax, S.A.*, 756 F.2d 263, 265 (2d Cir. 1985).

In this case, defendants argue, the Airlink tickets did not reference any other flights or a larger itinerary, they were marked "domestic," and they were purchased in Ghana, at a different time and place than the international tickets were purchased.  This, defendants contend, constitutes objective evidence that the parties did not intend the domestic Airlink flight to be a part of "undivided international travel."

Plaintiffs counter that the only way to purchase Airlink tickets was to purchase them in Ghana, that there were no

representatives authorized to sell Airlink tickets outside of Ghana, and that Airlink was the only air carrier flying between Accra and Tamale at the time of the crash.  *See* Auster Pl. Opp. at 9-10, n.4, citing defendants' Ex. 2.  Plaintiffs further contend that Airlink was on notice that plaintiffs regarded the domestic flight as part of a single, undivided international trip, based on the discussions plaintiffs had with the ticket agent who sold them the Airlink tickets regarding their need to return to Accra in time for their flights to the U.S. and because they identified themselves as foreigners.

In support of their contention that a purely domestic flight can constitute part of a single international journey for purposes of the Warsaw Convention, plaintiffs point to *Haldimann v. Delta Airlines*, 168 F.3d 1324 (D.C. Cir. 1999).  In *Haldimann*, the U.S. Court of Appeals for the District of Columbia Circuit affirmed the district court's determination that a purely domestic flight was nonetheless part of a single, international operation.  The Court based its decision on the "documentary indicia," and found that plaintiff's entire itinerary had been booked through one travel agent, the tickets were issued and paid for on the same day, and that the tickets shared a record number in the system so that a Delta agent looking at the Delta flights on a computer would see the Swissair portions of the trip, and vice versa.  *Id.* at 1325.

In the pending case, however, none of these "documentary indicia" are present.  Instead, the itineraries were booked by different agents, they were issued and paid for separately, and there is no evidence that an Airlink agent, looking up the record of the Tamale-to-Accra flight, would have seen the other, international, portions of plaintiffs' reservations in the computer.

The recent decision of *Robertson v. Am. Airlines, Inc.*, 401 F.3d 499 (D.C. Cir. 2005) is somewhat more helpful to plaintiffs. In that case, after reiterating that the court will look to objective evidence of intent to determine whether the parties intended a domestic leg to be part of "one undivided [international] transportation," the court affirmed the district court's finding that a domestic flight was covered by the Warsaw Convention.  *Id.* at 502.  Plaintiff Robertson sought to avoid the Warsaw Convention because the Convention's two-year statute of limitations would bar her claim against the airline; she argued that her tickets were purchased on two different airlines, on different days, and that they were issued in separate booklets. *Id.* at 503.  The appellate court, however, was unpersuaded, finding that Robertson clearly intended the domestic portion of her trip as part of her broader trip from London to Washington. *Id.*  The court noted that Robertson had only scheduled a three hour layover - hardly time to leave the airport - and that when

9

Robertson had changed the date of one part of the trip, she changed the other legs at the same time.  *Id.*

Next, the *Robertson* court considered whether the airline regarded plaintiff's trip as international travel.  The court concluded that although the airline may not have known that Robertson was traveling internationally when she boarded the domestic flight, the court applied the "imputation rule," imputing the travel agent's knowledge of the plaintiff's intentions to the airline.  *Id.* at 503-04.  Importantly, the court noted that it applied the imputation rule because the district court had done so and plaintiff's briefs on appeal did not dispute the rule's application.  *Id.*

In the instant case, however, the Court is not persuaded that the objective evidence supports a conclusion that the parties intended plaintiffs' air travel from Tamale to Accra to be part of "one undivided [international] travel."  First, plaintiffs' domestic tickets were purchased in different locations, at different times, and through different agents than were their international tickets.  Whether plaintiffs subjectively intended the domestic flight to be part of their international transportation is irrelevant in the face of the objective evidence.  Second, the fact that plaintiffs may have shown their passports to an Airlink agent or mentioned that they had a future flight to the U.S. does not provide notice to the defendant in this case that this was international travel.

Foreigners could be living in Ghana, or on an extended stay, taking a side trip to Tamale or Accra - by no means would every foreign passenger on a domestic flight be necessarily embarking on international travel.  Instead, plaintiffs' own evidence is more consistent with a domestic side trip than with a trip from New York to Tamale and back to New York or Washington, D.C. to Tamale and back to D.C.  *See, e.g.,* Affidavit of Megan Auster-Rosen, Auster Pl. Opp., Ex. C.; Affidavit of Siddhartha Prakash, Auster Pl. Opp., Ex. D.

Moreover, the conversations with ticket agents relied upon by the plaintiffs in this case, where plaintiffs allegedly discussed with the ticketing agents flights to the U.S. that they were to catch in the days following their arrival in Accra, are different than the agent's knowledge in *Robertson*, where one travel agent booked the domestic and the international tickets and thus, that agent's knowledge was imputed to the airline.  *See Robertson*, 401 F.3d at 503-04 ("[B]ecause the *only* evidence in the record confirms that American (through Gateway [Travel]) knew of the London-Denver leg of Robertson's trip, we concur in the district court's conclusion that there is no genuine dispute that the airline 'was aware of [her] international flight plans.'")(citations omitted)(emphasis in original).[3]

---

[3] While plaintiff Robertson did not challenge the imputation rule on appeal, defendants in this case distinguish the *Robertson* case and argue that "a conversation with a ticket agent in which plaintiff mentions his international travel plans does not change

Finally, as this and other courts have previously held,
"[t]he most significant objective evidence in this case is the
ticket itself." *See Manion*, 17 F. Supp. at 4 (citing cases and
other authorities).  In this case, the Airlink tickets were
stamped "domestic" and were purchased separately from the
plaintiffs' international tickets.  There is simply no objective
documentary evidence to support a conclusion that the parties
intended plaintiffs' domestic flight from Tamale to Accra to
constitute a portion of plaintiffs' international journey.

## IV.  Conclusion

Upon consideration of defendants' second motion for summary
judgment, the responses and replies thereto and the relevant case
and statutory law governing the issues, it is by the Court hereby

---

the nature of the transportation."  Def. Reply at 6.  Defendants
cite *Santleben v. Continental Airlines, Inc.*, 178 F. Supp. 2d
752, 755 (S.D. Tex. 2001)("To hold either Garuda or Continental
to Warsaw convention liability for supposed comments made in
passing to a single employee is wholly unreasonable. Stray
remarks do not alert an airline of its duties and liabilities.
The convention requires notice, not clairvoyance.") and *Coyle v.
P.T. Garuda Indonesia*, 363 F.3d 979, 993 (9th Cir. 2004)("[w]e
decline to adopt the district court's assignment of knowledge
based on its speculation regarding the Badens' putative contacts
with Garuda representatives--in particular, its suggestions (1)
that the Badens would have been required to show identification
when buying tickets or boarding Flight 152, thereby revealing
them to be American citizens and residents; and (2) that because
the side trip was planned so near to the Badens' scheduled return
to the U.S., they would have mentioned their pending
international flight to a Garuda representative in order to
confirm that they would return from Medan to Jakarta in time to
make their international flights.  We think that *Santleben's*
critique of this section of the district court opinion gets
things precisely right...").

**ORDERED** that defendants' motion is **GRANTED;** it is further

**ORDERED** that this case be removed from the active calendar of the Court.

A separate Order and Judgment accompanies this memorandum opinion.


**SIGNED:   EMMET G. SULLIVAN**
           **UNITED STATES DISTRICT JUDGE**
           **September 21, 2005**